MICHAEL B. HORROW (SBN 162917)
SCOTT E. CALVERT (SBN 210787)
DONAHUE & HORROW, LLP
1960 E. Grand Avenue, Suite 1215
El Segundo, California 90245
Telephone: (310) 322-0300
Facsimile: (310) 322-0302
Email: mhorrow@donahuehorrow.com
Email: scalvert@donahuehorrow.com

Attorneys for Plaintiff
Stefanie Hermanns

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFANIE HERMANNS,<br><br>    Plaintiff,<br><br>vs.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY; AON CORPORATION GROUP EMPLOYEE BENEFITS PLAN; DOES 1 THROUGH 10<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR BENEFITS UNDER A GROUP EMPLOYEE BENEFIT PLAN** |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1337 and 29 U.S.C. §1132(a), (e), (f) and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA") as it involves claims by Plaintiff for long-term disability ("LTD") and life insurance waiver of premium ("LWOP") benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. §1331, as this action involves a federal question.

2. The events or omissions giving rise to Plaintiff's claim occurred in this judicial district, thus venue is proper here pursuant to 28 U.S.C. §1391(b)(2), and the ends of justice so require.

3. The ERISA statute at 29 U.S.C. §1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

4. Plaintiff STEFANIE HERMANNS ("Plaintiff" or "Ms. Hermanns") is a resident of Orange County and citizen of the State of California, and at all relevant times was an employee of AON Corporation and a participant in its employee benefit plan, identified below. Ms. Hermanns was previously known by and used her married name "Stefanie Stamires," but has since changed her legal name back to "Stefanie Hermanns."

5. Plaintiff is informed and believes and thereon alleges that Defendant HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY ("Hartford") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Connecticut, and is authorized to transact and is transacting the business of insurance in this state.

6. Plaintiff is informed and believes and thereon alleges that Defendant AON CORPORATION GROUP EMPLOYEE BENEFITS PLAN ("Plan") is an employee welfare benefit plan established and maintained by AON Corporation

(and/or its related corporate entities) to provide employees with benefits including monthly long-term disability ("LTD") income insurance protection, life insurance and life insurance waiver of premium ("LWOP") benefits, and, is the Plan Administrator.

7. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and on such information and belief alleges that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this court to amend this complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiff.

8. Based upon information and belief, Hartford issued Group Policy Number GRH-675566 ("Disability Plan") to AON Corporation and the eligible participants and beneficiaries of the Plan, including Ms. Hermanns. The Disability Plan promised LTD benefits to eligible participants who met the Plan's definition of disability.

9. The Disability Plan defines "Disability," in relevant part, as follows:
> Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:
> 1. Your Occupation during the Elimination Period;
> 2. Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> 3. after that, Any Occupation.
>
> Your Disability must result from:
> • accidental bodily injury;
> • sickness;

- Mental Illness;
- Substance Use Disorder; or
- pregnancy.

10. Based upon information and belief, Hartford issued Group Policy Number GRH-395257 ("Life Plan") to AON Corporation and the eligible participants and beneficiaries of the Plan, including Ms. Hermanns. That policy promised life insurance benefits, as well as an extension of those benefits should the eligible participant meet the Life Plan's definition of disability.

11. Specifically, the Life Plan states: "If You become Disabled, You may qualify for Disability Extension. To qualify for Disability Extension, You must be Disabled prior to age 65. If You qualify for Disability Extension, You may continue Your coverage while You are Disabled provided the required premium payments are made."

12. The Life Plan defines "Disabled" as follows: "Disabled means You are prevented by injury or sickness from doing any work for which You are, or could become qualified by: 1) education; 2) training; or 3) experience."

13. Ms. Hermanns has been and remains totally disabled as defined by the Plan since on or about February 1, 2024 due to disabling symptoms caused by Chronic Inflammatory Demyelinating Polyneuropathy (CIDP) and related diagnoses. Hartford agrees that Ms. Hermanns has been disabled since this date.

14. On January 30, 2024, Ms. Hermanns fell at work, nearly hitting her head on a desk. On February 1, 2024, Ms. Hermanns stopped working due to her worsening symptoms.

15. Medical tests eventually confirmed Ms. Hermanns' disabling diagnoses. For example, the results of a SSEP,[1] dated March 29, 2024, demonstrated sensory pathway dysfunction and a July 1, 2024 NCS/EMG revealed borderline sural

---

[1] SSEP stands for Somatosensory Evoked Potentials, a neurodiagnostic test that measures the electrical activity of the nerves and brain in response to sensory stimulation, such as touch or vibration.

responses and slowed conduction velocities with evolving axonal changes consistent with CIDP.

16. Additional testing revealed Ms. Hermanns is a carrier of the SPG11 gene mutation, raising the possibility of underlying or overlapping hereditary motor neuron involvement such as recessive axonal Charcot-Marie-Tooth disease or adult-onset Amyotrophic Lateral Sclerosis (ALS) phenotypes.

17. Since her last day of work, Ms. Hermanns continues to receive regular treatment for disabling conditions rendering her unable to perform the essential duties of an Administrative Operations Manager or any occupation for which she is or could become qualified based on her education, training or experience.

18. Based upon information and belief, Ms. Hermanns timely filed claims for LTD benefits and Disability Extension benefits under the relevant plans.

19. By letter dated January 15, 2025, Hartford informed Ms. Hermanns that it was denying her claims, based on the assertion that the medical records did not support her claim that she met the requisite definitions of disability.

20. On July 11, 2025, Ms. Hermanns, through counsel, filed a timely appeal of Hartford's denial decision. The letter included a summary of her medical records, as well as additional records, supporting her claim that she had been, and remained, unable to work as of February 1, 2024.

21. On October 1, 2025, Hartford wrote a letter to Ms. Hermanns, notifying her that the company now agreed that she was disabled and entitled to disability benefits. A true and correct copy of the letter is attached hereto as Exhibit 1.

22. On October 6, 2025, Ms. Hermanns' counsel provided Hartford with a letter from Ms. Hermanns including instructions as to how her disability benefits check should be made payable and how benefits should be paid going forward.

23. After Hartford failed to pay the benefits in a timely manner, or even communicate with Ms. Hermanns or her counsel regarding the payment of those benefits, Ms. Hermanns, through counsel, attempted to contact Hartford regarding the

status of the payment of the promised benefits.

24. On October 17, 2025, Molly Hachtmann, office manager of Donahue & Horrow, left a voicemail message for Carole Roy at Hartford requesting an update on the status of the payment for past-due benefits.

25. A week later, with no response from Ms. Roy, on October 22, 2025, Ms. Hachtmann again left a voicemail message for Ms. Roy, requesting an update on the payment of past-due benefits that Hartford agreed were owed to Ms. Hermanns.

26. On October 23, 2025, Ms. Hermanns, through counsel, sent a letter to Hartford, detailing the previous requests for an update regarding payment of the benefits and again requesting information as to when she could expect payment of the past-due LTD benefits.

27. The next day, on October 24, 2025, Ms. Hermanns' counsel received a call from Carsyn Reis, Hartford Ability Analyst, explaining that Ms. Hermanns' file was just transferred to her, and that she was getting the file to her supervisor that same day to sign off on the approval of the claim and have the payment released. Ms. Reis stated that she expected it would take an additional 3-4 business days for the check to be processed.

28. On October 30, 2025, not having received payment of the past due benefits, nor any update from Hartford regarding the status of the payment, Ms. Hachtmann left a voicemail for Ms. Reis.

29. With no further communication from Ms. Reis or anyone else at Hartford forthcoming, on November 3, 2025, Ms. Hachtmann left another voicemail for Ms. Reis, again asking about the status of payment.

30. The next day, on November 4, 2025 Ms. Hermanns, through counsel, mailed and emailed a letter to Ms. Reis, documenting the previous attempts to get information from Hartford regarding the status of payment, and noting the unreasonable delay in withholding benefits:

> Hartford's decision to approve Ms. [Hermanns]' claim for long-term

COMPLAINT FOR BENEFITS UNDER A GROUP EMPLOYEE BENEFIT PLAN

disability benefits was made over 30 days ago.  If we do not receive a check for her past due benefits, or a satisfactory explanation as to the delay, within 48 hours, we will have no choice but to consider legal options to compel payment due.

31. On November 7, 2025, Ms. Reis sent an email to Ms. Hermanns, through counsel.  In the email, Ms. Reis did not explain why payment had yet to be made for a claim that was approved on October 1, 2025.  Instead, she noted that Hartford, for the first time, was conducting a review of Ms. Hermanns' eligibility for benefits.  The email did not state the basis for the review.  Nor did it state why Hartford – almost 8 years after Ms. Hermanns was hired by AON Corporation (on January 29, 2018), almost 7 years after her Effective Date of Coverage (December 18, 2018) and more than a year after she submitted her claim for benefits – suddenly believed that Ms. Hermanns' might not be eligible for benefits under the Plan.

32. Ms. Reis also failed to provide a justification for the delay under the terms of the Plan, ERISA or any relevant Department of Labor regulations.  Ms. Reis also failed to provide a timetable for Hartford's decision.

33. Hartford has improperly failed to pay benefits it agrees are due to Ms. Hermanns and failed to provide an explanation or justification for its actions.

34. As Hartford admitted in its October 1, 2025 letter, the company agrees that Ms. Hermanns is entitled to benefits from August 1, 2024 and forward.  Yet Hartford, unreasonably and without justification, has failed to pay her the benefits she is owed.  In doing so, Hartford has violated the terms of the Plan, ERISA and relevant Department of Labor regulations which require prompt payment of benefits due.

35. As a direct and proximate result of Hartford's failure to pay Ms. Hermanns' benefits, she has been deprived of said benefits from August 1, 2024 to the present.

36. By timely appealing Hartford's denial decision, and convincing Hartford

to overturn its denial decision, Ms. Hermanns has met all of her obligations under the Plan and ERISA.

37. As a further direct and proximate result of the denial of benefits, Plaintiff has been required to incur attorneys' fees to pursue this action and is entitled to have such fees paid by Defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

38. A controversy now exists between the parties as to non-payment of the benefits due under the Plan. Plaintiff seeks the declaration of this Court that Hartford's delay is unreasonable and that payment must be made promptly, with interest.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of disability benefits from August 1, 2024 to the date of judgment;

2. For reasonable attorneys' and costs fees incurred in this action; and,

3. For such other and further relief as the Court deems just and proper.

DATED: November 13, 2025                    DONAHUE & HORROW, LLP

                                            _____
                                            MICHAEL B. HORROW
                                            SCOTT E. CALVERT
                                            *Attorneys for Plaintiff*